**NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Sibyl S. HOLLAND, Appellee.**

**No. 17884.**

Court of Civil Appeals of Texas, Dallas.

May 11, 1972.

Rehearing Denied June 8, 1972.

Don Hinds, Yarborough, Yarborough & Hinds, Dallas, for appellant.

Jack B. Cowley, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellee.

BATEMAN, Justice.

The appellee Sibyl S. Holland sued to set aside an unfavorable common law arbitration award. Her claim was against appellant National Automobile & Casualty Insurance Company under the "uninsured motorist coverage" contained in an automobile liability policy issued by it to her. While operating her insured automobile she collided with an uninsured automobile and sustained serious bodily injuries. Appellee and appellant agreed to arbitrate her claim under the rules of the American Arbitration Association and to be bound by the award. The arbiter was Dallas attorney Robert S. Greenberg, who held a hearing and rendered a decision that appellee take nothing. This decision was assailed by this suit as being "arbitrary and capricious in that the order denying Plaintiff recovery was a willful and unreasoning action taken without consideration and in disregard of the facts and circumstances of the case."

The jury found, in answer to Special Issue No. 1, that in rendering such decision the arbitrator acted arbitrarily. Appellant had moved for instructed verdict and, after verdict, moved to disregard the jury's answer to Special Issue No. 1 and for judgment *non obstante veredicto,* all of which motions were overruled. These motions and appellant's objections to Special Issue No. 1 all raise the questions of "no evidence" and "insufficient evidence" to support the submission of the issue and the finding of the jury in response thereto, and are presented in appellant's first eight points of error on appeal.

The arbiter Greenberg testified that the parties had made two stipulations at the hearing before him: (1) that Steve Taylor, the other party to the accident, was uninsured, and (2) that if appellee was entitled to recover she would be entitled to the maximum benefits provided by the policy. The trial court did not permit a showing as to what evidence was submitted to the arbiter. These rulings are not complained of on this appeal. Appellee introduced in evidence a pamphlet issued by American Arbitration Association entitled "A Manual for Accident Claims Arbitrators," in which the following appears:

"Accident Claims arbitrators should not use their authority to compel the parties to settle the claim under dispute. * * * He should render an award which in his judgment reflects the true value of the claim."

Appellee took the position in the trial court, as she does in this court, that Greenberg mistakenly conceived it to be his duty to "settle" the dispute in the sense of working out a compromise, but that the stipulation of the amount, if any, which appellee would be entitled to recover prevented him from doing so and made the "take nothing" decision the only one available to him. In support of that contention appellee's counsel elicited from him the following testimony:

"Q Well, what are your duties as an arbitrator when we say you are an arbitrator, what are you supposed to do?

A To settle a dispute between two parties.

Q Specifically in relation to an insured [probably intended to be uninsured] motorist claim what would it be an arbitrator's duty to perform?

A To settle the dispute between the party bringing the claim and the party resisting the claim."

\* \* \* \* \* \*

"Q Mr. Greenberg, I believe you told us earlier that it was your understanding as an arbitrator that you were to settle the dispute between the parties?

A Yes, sir, with certain rules to go by."

\* \* \* \* \* \*

"Q So you had the sole responsibility of making the arbitration?

A That was my understanding, yes, sir.

Q And it was your understanding you were to settle the claim between the parties?

A I was to determine the dispute, yes, sir."

\* \* \* \* \* \*

"Q So with those two stipulations what was it your understanding you had to resolve?

A The dispute between Sibyl Holland and the insurance company."

\* \* \* \* \* \*

"Q All right, what did the dispute involve in fact?

A Well, whatever other facts were necessary to consider the claim \* \* \* of Sibyl Holland and whatever claim the insurance carrier presented.

Q And in summary that would be simply whether Mr. Taylor was legally liable to Sibyl Holland for any damages whatsoever, correct?

A Well, I think the legal question that was to be determined was whether or not the respondent company was li-able but in order for the respondent company to be liable you would have to read the policy and interpret the policy."

Greenberg also testified that the terms of the insurance policy as well as the common law would be applicable in the determination of the controversy and that Mr. Taylor had to be at fault in causing the accident and that Mrs. Holland had to be free of fault; that in addition to consideration of the negligence of the two parties he also had to consider whether the accident was unavoidable, and also what had been paid under the medical-pay clause. He then further testified:

"Q Will you tell us exactly what you mean when you say that it was your duty to settle the dispute between the parties?

A Well, as I understand it the parties came before an arbitrator and presented the claim and the defenses to the claim and it's up to the arbitrator to determine the validity or invalidity of the claim presented in accordance with the subject matter of the claim and the applicable facts and the applicable law applied to it."

\* \* \* \* \* \*

"Q Was it your thought you had to settle the case between the parties being unable to settle the case themselves?

A Well, I conceived my duty to make a decision, yes.

Q Do you ever recall telling anyone that your hands were tied, so to speak, in making an award because the parties had agreed that the judgment would be $10,000.00 or thereabouts in the event that Mrs. Holland won?

A Absolutely not, Mr. Moss.

Q You didn't tell that to anybody?

A Absolutely not."

Joe Hill Jones, one of the attorneys for appellee, testified that within a week or ten days after the arbitrator's decision Green-

berg told him that his hands were tied, that the parties had agreed that the damages sustained by the appellee were to be $10,-000, the amount of the uninsured-motorist coverage, and in view of that stipulation between the parties he, Greenberg, couldn't rule on the case in any other way than to allow nothing.

This was in substance all of the evidence offered by appellee to show arbitrariness of the award.

Both parties agree that the correct rule applicable to this situation is found in Grand International Brotherhood of Locomotive Engineers v. Wilson, 341 S.W.2d 206, 211 (Tex.Civ.App., Fort Worth 1960, writ ref'd n. r. e.), as follows:

"Mistake of an agreed arbiter in a conclusion, by way of quasi-judgment, is not arbitrary and capricious action. These terms, when used in connection with a situation such as is before us, must mean willful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary and capricious when exercised honestly and upon due consideration, where there is room for two opinions, however much it may be believed than an erroneous conclusion was reached."

■ It is well settled that an award made within the authority conferred on the arbiter is final and will not be set aside unless the party complaining of the award carries his burden of showing that the arbiter was "guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment." Albert v. Albert, 391 S.W.2d 186, 188 (Tex.Civ.App., San Antonio 1965, writ ref'd n. r. e.); Smith v. Barnett, 373 S.W.2d 762, 765 (Tex.Civ.App., Dallas 1963, no writ); Johnson v. American Can Co., 361 S.W.2d 451, 453 (Tex.Civ.App., Houston 1962, no writ); Haddad v. Bagwell, 317 S.W.2d 781, 784 (Tex.Civ.App., El Paso 1958, writ ref'd n. r. e.).

See also Johnson v. Korn, 117 S.W.2d 514, 521 (Tex.Civ.App., El Paso 1938, writ ref'd), wherein, after holding that arbitration awards are to be liberally and favorably regarded, that mere technical objections to them are not to be countenanced, that nothing will be presumed against them, and that they will be supported by every presumption in their favor not contradicted by proof, the court then said:

"Nor are we concerned with the soundness of the arbitrators' reasoning. We may not set aside the award merely because we think the arbitrators erred in judgment, provided only it were an honest judgment. * * * If, however, upon its face it shows that there was a mistake as to their authority, and that mistake controlled their findings to the manifest injury of the plaintiffs in error, the judgment must be set aside, and if the evidence raises a substantial question, the judgment must be reversed that a jury may determine the issue of fact."

■ Appellee argues under the last sentence in the above quotation that the arbiter Greenberg was mistaken as to his authority and that his mistake controlled his findings to appellee's injury, requiring the award to be set aside and the matter submitted to a jury. We do not agree with appellee. Greenberg's testimony is quite clear, we think, as to his understanding of the word "settle" as meaning a resolution or determination of the controversy after hearing by making a decision in accordance with the facts and the applicable law. He steadfastly resisted all efforts to make him admit that he thought his primary duty was to *compromise* the case, rather than determine it. We find no evidence of probative value in this record to indicate that Greenberg made any effort whatever to compromise the claim or that he considered it a part of his duty to do so.

Appellant contends that the testimony of Joe Hill Jones, mentioned above, is evidence that Greenberg considered it to be his duty to try to compromise the case.

Even if Jones' testimony may be said to have that effect, there is still no evidence that Greenberg in fact attempted to compromise the case, or that in reaching his decision he was influenced by an unsuccessful attempt to effect a compromise. Certainly, his award cannot be taken as an attempt to compromise, since appellee was awarded nothing. We find no evidence that his decision was based on anything other than the evidence adduced at the hearing. Even if he told Jones that "his hands were tied" by the parties' stipulation concerning damages, the jury could not reasonably infer from such remarks that he erroneously considered that his decision as to liability was also precluded by the stipulation. Consequently, we hold that Jones' said testimony was no evidence that his decision was arbitrary.*

Common law arbitration is a proceeding favored in Texas law. Ferguson v. Ferguson, 110 S.W.2d 1016, 1021 (Tex.Civ.App., Eastland 1937, no writ); Art. 16, § 13, Texas Constitution, Vernon's Ann.St. In *Ferguson* the court speaks of arbitration as "an appropriate remedy by which disputants may *settle* their controversies." (Italics ours.) The word "settle" was used by the court there, not in the sense of a compromise, but in the sense which Greenberg obviously used it in his testimony; i. e., as the determination of a controversy, a decision which would resolve that controversy with the expenditure of a minimum of time and money.

We hold that there was no evidence and insufficient evidence that the arbitration award was arbitrary or capricious, and accordingly sustain appellant's first eight points of error on appeal.

In view of our conclusions above stated it becomes unnecessary that we consider appellants' Points 9 through 17, inclusive.

In our opinion appellant's motions for instructed verdict, to disregard the jury's answer to Special Issue No. 1, and for judgment *non obstante veredicto* should have been granted. The judgment appealed from is therefore reversed and here rendered that appellee take nothing.

Reversed and rendered.

---

\* We find it unnecessary to pass upon the admissibility of Jones' testimony over the objection that it was hearsay. We have serious doubt that an arbitrator's decision may be thus impeached, for it is said that delving into arbitration proceedings for the purpose of impeaching the award seems to be governed by the rules applicable to impeaching jury verdicts. McCormick & Ray, Texas Law of Evidence, 2d Ed. (1956), § 401, p. 343; and in Wigmore on Evidence (McNaughton 1961 Revision) Vol. VIII, § 2354, p. 716–7, it is said that facts tending to impeach a verdict, if admissible at all, "should be evidenced by the juror's own account under oath * * and not by *hearsay* statements of others as to his account."