

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00412-CV

_____

MARVIN L. TROUTMAN, Appellant

V.

NASA FEDERAL CREDIT UNION, Appellee

_____

On Appeal from County Court at Law No. 1
Parker County, Texas
Trial Court No. CIV-20-0419

_____

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Marvin L. Troutman, pro se, appeals from the trial court's turnover and receivership order (the turnover order) in favor of Appellee NASA Federal Credit Union (the Credit Union). In three issues, Troutman argues that the trial court did not have jurisdiction to render the turnover order and the underlying judgment, that the turnover order was not supported by sufficient evidence, and that the trial court violated his oath of office. Because Troutman's issues are without merit, we affirm.

## Background

The trial court granted summary judgment for the Credit Union in its breach of contract suit against Troutman, and it awarded the Credit Union $31,779.40 in damages, plus interest and attorney's fees. Troutman filed a notice of appeal from the judgment, but this court dismissed the appeal because of his "flagrant violation of the briefing rules," which he did not correct despite this court's warning that a failure to do so would result in dismissal. *Troutman v. NASA Fed. Credit Union*, No. 02-20-00401-CV, 2021 WL 1134453, at *1 (Tex. App.—Fort Worth Mar. 25, 2021, no pet.) (mem. op.).

The Credit Union subsequently filed an "Application for Turnover Order & Appointment of a Receiver" in order to collect on the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002. The application asserted that the Credit Union had established its right to a turnover order through deemed admissions. *See* Tex. R. Civ. P. 198.1. The attached requests for admissions, which were accompanied by a certificate of service, requested Troutman to admit that he was indebted to the Credit Union for

2

the amount in the judgment and that he had various types of property that were not exempt from execution, including an active bank account. *See* Tex. R. Civ. P. 21a; *Cruz v. Sanchez*, 528 S.W.3d 104, 111 (Tex. App.—El Paso 2017, pet. denied) (citing Tex. R. Civ. P. 21a(e) and stating unchallenged certificate of service is prima facie evidence of receipt). In response, Troutman filed a variety of documents, but none of the filings addressed the requests for admissions or cited to or discussed Texas Civil Practice and Remedies Code Section 31.002.[1] After a brief hearing, the trial court signed the turnover order.

## Standard of Review

We review for an abuse of discretion a trial court's rendition of a turnover order. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). Whether any evidence supports the

---

[1]These documents were a "Judicial Notice of Liability: Attorney no Authority/Constitutional Challenge," a "Judicial Notice of Facts and Laws," a "Deposition of Marvin Luther Troutman Victim," and an "Objection to Plaintiffs Application for Turnover Order & Appointment of a Receiver." The documents primarily cited federal law and Texas criminal law inapplicable to turnover proceedings. One document stated that the trial court "is not allowed to use my Trade Name MARVIN LUTHER TROUTMAN" and offered the court a Licensing Agreement to use Troutman's name. Several of the documents asserted that the Credit Union's attorney was not a licensed attorney.

turnover order is a relevant consideration in determining if the trial court abused its discretion by rendering the order. *Beaumont Bank*, 806 S.W.2d at 226.

## Discussion[2]

## I. First issue

In Troutman's first issue, he challenges the trial court's subject-matter jurisdiction. The first several pages of argument under this issue are devoted to various assertions about the Credit Union's failure to prove its breach of contract claim in the underlying lawsuit. He argues that the underlying suit should have been dismissed for lack of subject-matter jurisdiction because there was no competent evidence to support the Credit Union's breach of contract claim. For the same reasons we rejected that argument in *Rocha*, we overrule this part of Troutman's first issue. *See Rocha*, 2022 WL 2176517, at *2.

Also under this issue, Troutman contends that the parties' contract raised standing and capacity issues because the contract was signed in Maryland and the law of the contract is federal law, and because the Credit Union is not permitted to contract with the general public. Troutman's arguments under this part of the issue are very

---

[2]Troutman's brief is remarkably similar—in some sections identical—to the appellant's brief filed in unrelated appeal involving the Credit Union. *See Rocha v. NASA Fed. Credit Union*, No. 02-21-00416-CV, 2022 WL 2176517, at *2 (Tex. App.—Fort Worth June 16, 2022, no pet.) (mem. op.). Like the brief in that case, some of the arguments in Troutman's brief are difficult to parse, but we address them to the extent we can understand them.

similar to those made in *Rocha*, and they fail for the same reason the appellant's arguments failed in that case. *See id.* at *2 & nn.2–3. We overrule the remainder of his issue.

## II. Second issue

In Troutman's second issue, he argues that the trial court abused its discretion by appointing a receiver. He asserts that if we review the record of the hearing, we will see that the Credit Union failed to provide testimony or other admissible evidence showing the need for a receiver or that he owns non-exempt property. We construe his issue to challenge the legal sufficiency of the evidence to support the turnover order. *See Z.M. Shayjayadam3, LLC v. Omnova Sols., Inc.*, No. 14-19-00623-CV, 2020 WL 6278615, at *3 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.) (construing "no evidence" argument seeking reversal and rendition as a challenge to legal sufficiency).

Troutman is correct that the Credit Union did not introduce evidence at the hearing—instead, it relied on the deemed admissions. The requested admissions addressed the elements necessary for the Credit Union to establish its entitlement to a turnover order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002; *Robison v. Watson*, No. 04-20-00138-CV, 2021 WL 2117936, at *5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) (stating that a "turnover order requires a factual showing that the judgment debtor owns non-exempt property" and that "[o]nce the judgment creditor produces evidence that the judgment debtor owns property, the burden shifts to the

judgment debtor to prove the property is exempt from turnover"). Further, under the turnover statute, when a party establishes the right to a turnover order, the trial court has the discretion to appoint a receiver to administer the turnover order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(3); *Robison*, 2021 WL 2117936, at *2; *Black v. Shor*, 443 S.W.3d 170, 175 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.) (noting that when Section 31.002 requirements for a turnover order are satisfied, trial court has discretion to appoint a receiver to take possession of nonexempt property); *cf. Remote Control Hobbies, L.L.C. v. Airborne Freight Corp.*, No. 14-12-01088-CV, 2014 WL 1267073, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2014, no pet.) (mem. op.) (stating that Civil Practice and Remedies Code Chapter 64 requirements for receivers are not applicable in a Section 31.002 proceeding); *Schultz v. Cadle Co.*, 825 S.W.2d 151, 154 (Tex. App.—Dallas 1992) (stating that traditional requirements for appointment of receiver are inapplicable in postjudgment turnover proceeding), *writ denied*, 852 S.W.2d 499 (Tex. 1993).

In the trial court, Troutman did not address the Credit Union's requests for admissions in any manner; he did not deny that he had received the requests or that he failed to respond to them, and he did not ask the trial court to un-deem the admissions. *See* Tex. R. Civ. P. 198.3. Likewise, Troutman's appellate brief does not address the issue, and thus his brief does not address the basis on which the trial court rendered the turnover order. *See* Tex. R. App. P. 38.1(i); *Lesher v. Doescher*, No. 02-12-00360-CV, 2013 WL 5593608, at *3 (Tex. App.—Fort Worth Oct. 10, 2013, pet. denied) (mem. op.)

6

(noting that this court cannot create or develop arguments for an appellant). He argues only that the Credit Union did not produce evidence at the hearing. We therefore overrule the legal sufficiency part of his issue.

Also under this issue, Troutman argues that the trial court failed to submit findings of fact and conclusions of law to support the turnover order.[3] As we explained in *Rocha*, a trial court's failure to file properly-requested findings and conclusions is harmless when that failure does not prevent the appellant from properly presenting its case on appeal. *See Rocha*, 2022 WL 2176517, at *4; *see also Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). Troutman does not explain how the trial court's failure to make findings and conclusions prevented him from properly presenting his case on appeal. Like the appellant in *Rocha*, Troutman makes no argument that he was left guessing the basis for the trial court's order, and he was able to challenge the sufficiency of the evidence to support the turnover order. *See Rocha*, 2022 WL 2176517, at *4. Any error in failing to file findings and conclusions was harmless. *See* Tex. R. App. P. 44.1; *In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Isaac v. Burnside*, 616 S.W.3d 609, 614 (Tex. App.—Houston [14th Dist.]

---

[3]Troutman filed an "Affidavit in Support of Request for Findings of Fact and Conclusions of Law/Equity." For purposes of this appeal, we assume that this document met the requirements of Civil Procedure Rule 296. Troutman subsequently filed a "Notice of Past Due Finding of Fact and Conclusion of Law," and we assume that this document met the requirements of Civil Procedure Rule 297. *See* Tex. R. Civ. P. 296, 297.

2020, pet. denied); *Tolpo v. Denny*, No. 02-15-00231-CV, 2016 WL 1601068, at *4 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.).

Finally under this issue, Troutman complains that the trial court ended the hearing without asking Troutman if he had "anything else to say." He further contends that when he asked how the court could sign the order without any evidence, the court mocked Troutman and then screamed at him to get out of the courtroom.

At the hearing, the trial court asked the parties if they had anything else to offer beyond what was already "in the record." The Credit Union's attorney stated that the Credit Union was relying on the evidence with its motion, i.e., the deemed admissions. The trial court then placed Troutman under oath and gave him the opportunity to speak. Troutman began by stating that he objected to everything the Credit Union's attorney said "due to hearsay" and because the attorney "is either an attorney or a witness, and only an injured human being can testify; not an attorney." He then stated that he "further testif[ied] [to the] accuracy of all [his] affidavits and notices filed into this court case. All the affidavits and notices have been unrebutted and stand as fact." The following exchange then occurred among the trial court, Troutman, the Credit Union's attorney, and an unidentified speaker:

> THE COURT: All right. Anything else from anybody?
>
> [The Credit Union's attorney]: No, Your Honor.
>
> THE COURT: I've signed the document entitled Order Granting the Motion for Turnover and Appointment of Receiver. Everything set out therein is the order of the court. These parties are excused. Thank you.

MR. TROUTMAN: Objection, Your Honor.

THE COURT: I don't hear an objection.

MR. TROUTMAN: Well, how can you sign a document that has no testimony?

THE COURT: I use my pen. You're excused.

UNIDENTIFIED SPEAKER: Your Honor, for the record criminal charges have been pressed against [the Credit Union's attorney]. He is not a licensed attorney. He does not have any authority. He's simulated a legal process. You are an accessory to the fact. I am a witness. I accept your oath to the State of Texas and the United States of America.

Do not touch me.

THE BAILIFF: You need to go.

UNIDENTIFIED SPEAKER: I accept your oath. You are an accessory to the facts of criminal and civil – assimilating a legal process.

THE COURT: You're not a party to this suit and you are excused. Please leave the courtroom.

UNIDENTIFIED SPEAKER: You are assimilating a legal process.

THE COURT: Escort him out, Mr. Bailiff.

THE BAILIFF: Judge said go.

MR. TROUTMAN: Your Honor, are you and [the Credit Union's attorney] committing trust malfeasance?

THE COURT: Get out of my courtroom. You're out of order. Both of you.

Troutman argues that this exchange shows that the trial court "did not request any evidence or testimony from a competent witness, nor any sworn statements from

[the Credit Union] that a debt was still existing. . . .” We disagree. Although the trial court's comment about signing the order with his pen was perhaps flippant, the court's handling of the hearing and its ordering Troutman to leave the courtroom showed nothing more than the court controlling the courtroom. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (stating that a trial judge had discretion over the conduct of a trial, that a court "has the authority to express itself in exercising this broad discretion," and that "a trial court may properly intervene to maintain control in the courtroom"). Nothing in this exchange negates the evidence that the trial court had before it. We overrule the remainder of Troutman's second issue.

## III. Third Issue

In Troutman's third issue, he asserts that the trial court "failed to provide due process of law to [him] and violated [the court's] Oath of Office and Fiduciary Duty as Trustee to the Public Trust." Under this issue, he argues that the trial court committed fraud by deliberately concealing material information from him, but he does not specify what that information was or otherwise discuss the elements of fraud. *See* Tex. R. App. P. 38.1(i). Citing to *Clearfield Trust Company v. United States*, 318 U.S. 363, 364, 63 S. Ct. 573, 574 (1943), Troutman then argues that under "the *Clearfield* doctrine," lower courts "are actually under control of the Uniform Commercial Code," that they are not "a judicial venue created by an act of Congress" and are instead "private banks using commercial paper," and that they are thus mere private corporations. *Clearfield Trust* has no application to this case, and Troutman's argument is without merit. *See id.*; *United*

10

*States v. Hakim*, No. 1:18-cr-126-MLB-AJB, 2018 WL 6184796, at *6 (N.D. Ga. Aug. 22, 2018, report and order) (explaining *Clearfield Trust* and its limited application), *report and recommendation adopted*, No. 1:18-cr-00126, 2018 WL 4791085 (N.D. Ga. Oct. 4, 2018); *Bey v. S.C. Berkeley 9th Judicial Court*, No. 2:17-cv-3248-RMG-MGB, 2018 WL 1135382, at *3 (D.S.C. Feb. 7, 2018) (report and recommendation) (stating that the plaintiff had contended that the state court was a "private corporation" and taking judicial notice that plaintiff's contention was "simply wrong").

Finally, Troutman argues that the trial court "cut the hearing short, skipped evidence, overlooked admissible evidence from [Troutman], and made a decision that would benefit the court, not the people." To the extent that he argues that the trial court was biased, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994); *De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *3–4 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.). Likewise, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Dow Chem.*, 46 S.W.3d at 240 (citing *Liteky*). We have rejected Troutman's argument that the Credit Union's motion was unsupported by sufficient evidence, and he does not explain how his "admissible evidence"—presumably his trial testimony and the documents he filed in the trial court—defeated the Credit Union's entitlement to a turnover order. Further, he has provided no citations to legal authority or to the record to support his

argument that the rendition of the turnover order benefited the trial court. We overrule Troutman's third issue.

## Conclusion

Having overruled Troutman's three issues, we affirm the trial court's order.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  August 18, 2022